ATTORNEY DISCIPLINARY PROCEEDINGS
_JiPER CURIAM.*
This attorney disciplinary proceeding arises from three counts of formal charges *411 instituted by the Office of Disciplinary Counsel (“ODC”) against respondent, James K. Nichols, an attorney licensed to practice law in the State of Louisiana. The charges allege violations of Rules 1.3 (lack of due diligence), 1.4 (failure to comply with reasonable requests for information), 1.15(a) (commingling of client funds with attorney’s funds), 1.15(b) (failure to protect the interests of a third party in settlement proceeds), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (engaging in criminal acts adversely reflecting on a lawyer’s honesty), and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct.
UNDERLYING FACTS

Count I. Thompson Matter

Respondent acted as attorney for Horace Alford and prepared a trust instrument for him, whereby certain sums of money would be transferred to various persons upon Mr. Alford’s death. Mr. Alford died on March 18, 1992, and Beauregard Federal Savings Bank, the bank holding the trust funds, disbursed the funds to the various beneficiaries. On April 15,1992, the bank sent three checks to respondent for delivery to the appropriate parties, including a check in the amount of $65,000 payable to Mrs. R.V. Thompson. Respondent endorsed and deposited this check into his client trust account without the knowledge or permission of Mrs. Thompson. Despite Mrs. Thompson’s requests to respondent for the funds, he did not deliver them to her until May 20, 1992. Respondent’s financial records indicated that his client trust account fell below the escrowed amount bduring the period he held the funds.[1]
As a result of this conduct, the attorney general’s office conducted an investigation[2] and later charged respondent in the Thirty-Sixth Judicial District Court for the Parish of Beauregard with one count of felony unauthorized use of a movable valued in excess of $1,000, in violation of La.R.S. 14:68. Respondent subsequently pled guilty to this charge. He received a one-year suspended sentence, along with a $3,000 fine. Additionally, he was placed on two years probation, and ordered to perform 500 hours of community service. Respondent also resigned his judgeship.

Count II: Simmons/Barksdale Matter

Respondent represented the Barksdale Credit Union in a collection matter involving Sandra Poe Simmons. On March 15, 1989, Ms. Simmons sent a check to respondent in the amount of $5,500, representing partial payment of the judgment. She forwarded the remaining balance of $814 to him on March 28, 1989. Respondent deposited both cheeks into his escrow account and deducted his attorney’s fees. Although respondent canceled the judicial mortgage on Ms. Simmons’ property, he failed to forward the funds to the credit union.[3]

Count III. Other Escrow Deficiencies

Respondent’s financial records indicate that his client trust account became overdrawn on four occasions from July 29, 1991 to May 26,1995.
DISCIPLINARY PROCEEDINGS
On November 17, 1994, the ODC filed one count of'formal charges against respondent, involving the Thompson matter only. Respondent filed an answer. Subsequently, after respondent entered his guilty plea in connection with the Thompson criminal proceedings, this court bplaced him on interim suspension, effective June 15, 1996, pursuant to Rule XIX, § 19. In re Nichols, 96-1080 (La.5/30/96), 673 So.2d 598.
Prior to the formal hearing, respondent filed a petition for consent discipline, seeking *412 a suspension for a period of one year and one day, totally deferred, subject to a two year probation with certain conditions. The ODC concurred in the petition, and the hearing committee recommended that it be approved.
The matter was then submitted to the disciplinary board. Prior to rendering its recommendation, the board learned of the Simmons/Barksdale matter and the escrow account deficiencies. Accordingly, the board stayed its decision until a full review of these matters could be conducted.
Respondent and the ODC then jointly submitted an amended consent discipline proposal which encompassed all the allegations of misconduct against respondent. The petition sought the imposition of a three year suspension from the practice of law, with two years deferred, followed by a two year period of supervised probation subject to conditions. The disciplinary board recommended that this court adopt the proposed consent discipline.
On October 10, 1997, this court rejected the proposed consent discipline and directed the ODC to institute formal charges in the Simmons/Barksdale matter and the escrow account deficiencies, and to consolidate them with the formal charges filed in the Thompson matter. In re Nichols, 97-2246 (La.10/10/97), 703 So.2d 593, reh’g denied, (La.11/21/98), 703 So.2d 1295.
Pursuant to this order, the ODC supplemented and amended the formal charges to include Count II and Count III, relating to the Simmons/Barksdale matter and escrow deficiencies, respectively. A formal hearing before the committee was conducted on all three charges. Respondent appeared at the hearing and was represented by counsel. By stipulation, the parties introduced the entire record and findings of the disciplinary board in its earlier recommendation.

Hearing Committee Findings and Recommendation

As to the Thompson matter, the committee found respondent violated the rules as charged. However, as to Counts II and III, the committee determined “respondent’s conduct constituted, at worst, simple negligence” and did not rise to the level of a violation of the Rules of ^Professional Conduct. The committee adopted by reference the aggravating factors [4] and mitigating factors [5] which were recognized by the disciplinary board in its earlier recommendation. Based on these considerations, the committee recommended respondent, be suspended from the practice of law for a period of two years, with six months of the suspension deferred, subject to a two year period of probation with conditions.

Disciplinary Board Recommendation

The disciplinary board concurred in the findings of the hearing committee that respondent converted funds in the Thompson matter, as set forth in Count I. However, it deviated from the committee’s findings with respect to Counts II and III, concluding that respondent’s negligence in connection with these matters constituted professional violations.[6] Accordingly, the board found all *413 three counts of misconduct were proved by clear and convincing evidence.
The board adopted the aggravating and mitigating factors cited in its earlier recommendation. However, the board elaborated on three of the mitigating factors.
As to the mitigating factor of mental disability, the board noted the respondent suffered from major depression from 1992 to 1995. In 1992, he sought treatment and was doing well until June, 1994, when he stopped taking his medication and suffered a relapse. In February, 1995, he began seeking additional treatment. In an independent evaluation conducted by Dr. James ^Anderson, a board certified psychiatrist, respondent was diagnosed with “major depression, recurrent, severe, without psychotic symptoms, in full remission.” Subsequently, respondent began regular treatment with Dr. Anderson, as well as a therapist.
In support of the mitigating factor of delay in disciplinary proceedings, the disciplinary board pointed out all the actions forming the basis for the charges had occurred between six and one-half years to nine years ago. The board also recognized respondent has been on interim suspension for two and one-half years without a final decision on his case.
Finally, in support of the mitigating factor of imposition of other penalties, the board noted the respondent was prosecuted in the criminal justice system for his conduct in the Thompson matter. The board observed that “in many areas of the state, lawyers are not prosecuted for theft of client funds when restitution has been made promptly, or when civil remedies are available.”
While the board conceded respondent’s misconduct warranted a baseline sanction of a three year suspension under the commingling and conversion guidelines set forth in Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), it found the significant mitigating factors justified a deviation from this sanction. Accordingly, the board recommended respondent be suspended from the practice of law for a period of three years, with one year deferred, retroactive to the date of his interim suspension.[7]
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The record supports the conclusion that all three counts of misconduct against respondent have been proven by clear and convincing evidence. Of these, the conversion of trust funds in the Thompson matter is clearly the most serious misconduct. Respondent forged an endorsement on a $65,000 check made out to Mrs. Thompson and deposited it in his trust account without her knowledge. It was undisputed that during the period respondent held the funds, the balance in his trust account fell below $65,000. While respondent ultimately made full restitution feto Mrs. Thompson, she was deprived of her funds for over twenty days. Under the guidelines set forth in Hinrichs, the baseline sanction for respondent’s conduct ranges from disbarment to a three year suspension.[8]
*414 However, we agree with the disciplinary board that there are several mitigating factors present, the most significant of which are respondent’s mental problems at the time of the misconduct, and the fact that he was criminally prosecuted for his actions. Under these circumstances, the sanction recommended by the disciplinary board is appropriate.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is the decision of this court that the recommendation of the disciplinary board be adopted.
Accordingly, it is ordered that respondent, James K. Nichols, be suspended from the practice of law for a period of three years, with one year of said suspension deferred. It is further ordered that the commencement of the suspension be made retroactive to the date of respondent’s interim suspension, June 15, 1996. All costs in this matter are assessed against respondent, with legal interest to commence thirty days from the date of the finality of this court’s judgment until paid.

 Knoll, J. not on panel. Rule IV, Part II, § 3.

. Bank records of the client trust account indicated that between April 30, 1992 and May 21, 1992, the respondent converted between $28,-777.48 and $31,228.26.

. The investigation was commenced by the attorney general’s office, since at the time of the criminal charges, respondent was a judge of the DeRidder City Court. Respondent subsequently resigned from the bench.

.The credit union did not receive its portion of the funds until February 20, 1996, seven years after Ms. Simmons had paid the funds to respondent.

. These aggravating factors were: dishonest or selfish motive, pattern of misconduct, multiple offense, substantial experience in the practice of law, vulnerable victim and illegal conduct.

. These mitigating factors were: prior, disciplinary record, timely good faith effort to make restitution, full and free disclosure to the board and cooperation in the disciplinary proceedings, delay in disciplinary proceedings, personal or emotional problems, mental disability or impairment, imposition of other penalties and sanctions, public and private statements of remorse, no profit to respondent, otherwise good character and service to his church and community, and payment of all costs. The disciplinary board also listed serious adverse publicity as a mitigating factor, but the hearing committee declined to adopt this factor.

.Since the hearing committee did not render factual findings as to Counts II and III, and since the matter was submitted primarily on documentary evidence, the board adopted its findings from its earlier recommendation. With regard to the Simmons/Barksdale matter, the board noted the respondent alleged he told his bookkeeper to send the payoff amount to the credit union when he had the judgment canceled. When respondent learned the proceeds were never forwarded, he instructed his staff to mail the payoff. . The board recognized that no criminal charges were filed in this matter. As to the escrow deficiencies, respondent alleged the four instances in which the trust account was overdrawn involved situations in which the respondent closed loans and issued the loan proceed checks from his trust account prior to depositing *413 the funds from the mortgagee. Respondent contended the trust account in these instances were overdrawn for a few hours or until the next business day, and were primarily bookkeeping oversights, although one involved a check on which the mortgage company stopped payment for seven days when a loan packet did not timely arrive in accordance with terms of the mortgage agreement.

. The disciplinary board specifically noted that it did not recommend that a probationary period or conditions accompany the deferred period of suspension, but stated that imposition of probation may be appropriate at the time respondent applies for reinstatement.

. In Hinrichs, we explained:
In a typical case of disbarment [for commingling and conversion], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
A three year suspension from practice typically results in cases involving similar but less aggravated factors. In such cases the lawyer is guilty of at least a high degree of negligence in *414 causing his client’s funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.